## TURNER *v.* BANK OF FOX LAKE.

### June 1867.

#### [Affirming 23 *How. Pr.* 399.]

The fact that a collecting agent, upon presenting a draft, receives the drawee's check upon a local bank for the amount, and surrenders the draft to the drawee, who stamps it "paid," is not payment, so as to discharge the drawer, if the check on due presentment is refused payment.

It is not laches in the presentment of such a check, to present it through the clearing-house, the day after it is received, if this be proven to be the usage of the place.[*]

John W. Turner and four others sued defendants, in the supreme court, as drawers of a draft or bill of exchange, which, on presentation, was protested, for non-acceptance by the drawees.

The defense was, that the draft was given to pay a former similar draft, under false representations that the former draft had not been paid. The facts relied on, as constituting payment of the former draft were as follows: That draft was drawn by defendants, on John Thompson, a private banker in the city of New York. The plaintiffs, holding it as indorsees,

---

[*] Compare Smith *v.* Miller, 52 *N. Y.* 545; 43 *N. Y.* 171, rev'g 6 *Robt.* 413; S. C., 6 *Abb. Pr. N. S.* 234; Kelty *v.* Second National Bank of Erie, 52 *Barb.* 328; Johnson *v.* Bank of North America, 5 *Robt.* 554; 45 *N. Y.* 67.

transmitted it to the Nassau Bank of that city, as their agents, for collection. The Nassau Bank presented it to Thompson the drawee, on August 24, 1857, and received his check for the amount of it, and surrendered the draft to Thompson, who stamped it "paid," and charged the amount to the defendants.

Although Thompson's account with the bank on which his check was drawn was overdrawn in the course of the day on the said twenty-fourth of August, all his checks presented on that day were paid. The next morning Thompson suspended payment.

On the trial it appeared by evidence that in the ordinary course, and according to custom in the city of New York, a check so received would be presented the day after it was received, by sending it through the clearing-house to the counter of the bank, on which it was drawn. This check was so presented; but Thompson having failed meanwhile, it was dishonored.

Defendants offered to prove that Thompson had funds of theirs when the draft was presented to him, and it would have been paid in specie if the collecting bank had required. This was excluded.

After judgment for plaintiffs, defendants appealed.

*A. Gibbs,* for defendants, appellants, citea :—Southwick *v.* Sax, 9 *Wend.* 122.; *Story on Bills,* § 419; note to ed. 2, 539; Chapman *v.* White, 6 *N. Y.* (2 *Seld.*) 412, and cases there cited; 7 *Paige,* 457; Caldwell *v.* Sanders *Banker's Mag.* June, 1859; August, 1850.

*B. F. Mudgett,* for plaintiff, respondent, cited:—*Court of Errors,* 1800; Porter *v.* Talcott, 1 *Cow.* 359; Van Eps *v.* Dillaye, 6 *Barb.* 244; Vail *v.* Foster, 4 *N. Y.* (4 *Comst*), 312.

BY THE COURT,—GROVER, J.—The question in this case is, whether the defendants were discharged as drawers of the first draft; as their supposed liability as such was the sole consideration upon which the one in suit was drawn, and that was

drawn in ignorance of the facts upon which it is now claimed such liability had been discharged. The question is not affected by the fact that funds had been placed in the hands of the drawee of the first draft, by the drawer, for the purpose of paying this particular draft, as the liability of the latter in such a case is the same as it is where the former is in funds for the payment of the general drafts of the drawer.

The first ground upon which the defendants claim to have been discharged is, that the Nassau Bank, the agent of the holder for the collection of the first draft, accepted the check of the drawee for its amount, drawn upon a city bank, upon presenting the draft for payment at the place of business of the drawee, in the city of New York. Although payment of such check was refused by the bank, yet so far as the drawee is concerned, it is clear that the check was no payment. He, therefore, did not pay the draft. The obligation of the defendants, was that he should pay upon presentation. The draft was presented and payment neglected by the drawee; giving the check being no payment, as to him, unless paid. That created a contingent liability against Thompson, the drawee, and may be regarded as equivalent to the taking by a creditor of an obligation against a third person from his debtor on account of a previous debt. The law is settled, in this state, that this does not amount to payment of the debt. Porter *v.* Talcott, 1 *Cow.* 359; Vail *v.* Foster, 4 *N. Y.* 212. If the obligation is taken pursuant to an agreement to take the same in payment, the rule is different.

There is no claim in the present case that there was any agreement to take the check in payment. It did not, therefore, extinguish the obligation of the defendants. That obligation was to pay the draft to the holder, if the drawee failed to pay upon presentation in due time, and the requisite notice thereof was given to the defendants. The stamping upon the draft the word "paid," by Thompson, and charging the amount to defendants was wholly immaterial. The evidence showed that it was not paid, and thus any presumption arising from the stamping was completely overthrown.

Had the holder's agent been guilty of laches in presenting the check, such laches would have discharged the defendants

The evidence shows that it was presented the next day after drawn, through the clearing house, and payment refused, and also that this was the regular course of business for presenting checks, drawn upon banks in New York.   There was no laches in thus presenting it.   No question was made but that the requisite notice of non-payment was served upon defendants. My conclusion is, that defendants were properly charged upon the first draft, and that, therefore, the judgment should be affirmed.

All the judges concurred, except DAVIES, Ch. J., and BOCKES J.

Judgment affirmed, with costs.